**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| LETICIA WILSON, ) | |
| ) | |
| Plaintiff, ) | **CIV. NO.: 07-cv-00024** |
| v. ) | |
| ) | |
| VIRGIN ISLANDS WATER AND POWER ) | |
| AUTHORITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM OPINION**

Finch, Senior Judge

Plaintiff Leticia Wilson brings this action for violations allegedly arising out of her employment with the Virgin Islands Water and Power Authority ("WAPA"). Wilson claims that she was discriminated against and improperly terminated because she was pregnant and that statements made by a WAPA employee concerning the reason for her termination were defamatory. WAPA contends that she was terminated because she did not meet the conditions of employment and that any statements made with regard to her termination were true and thus not defamatory. WAPA denies any discrimination on the basis of Wilson's pregnancy.

Wilson has the following claims pending before the Court: (1) defamation (count I); (2) a violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615 (count II); (3) sex and pregnancy discrimination (count IV); (5) breach of duty of good faith and fair dealing (count V); and (6) negligent infliction of emotional distress (count VI).[1]

On March 10, 2010, WAPA filed a motion for summary judgment and shortly thereafter filed a motion to dismiss, both now under consideration. In the motion for summary judgment,

_____

[1] The claim of local civil rights violations alleged in count III, and the claim for intentional infliction of emotional distress alleged in count VI have been dismissed by the Court. (Order, Jan. 23, 2009.)

WAPA argues that it is entitled to summary judgment as to all claims.   In the motion to dismiss, WAPA contends that counts I and VI must be dismissed because the Court lacks subject matter jurisdiction to hear those claims.  Wilson opposes both motions.

### I.      Motion to Dismiss

WAPA brings its motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Rule 12(b)(1) permits a party to move for dismissal on the grounds that the court lacks subject matter jurisdiction to hear the claims asserted by the plaintiff.    WAPA contends that Wilson's failure to comply with the prerequisites of the Virgin Islands Tort Claim Act ("VITCA") divests the Court of jurisdiction.

VITCA, codified at 33 V.I.C. §§ 3401-3416 provides for a limited conditional waiver of immunity from tort claims that the government of the Virgin Islands enjoys pursuant to § 2(b) of the Revised Organic Act, 48 U.S.C. § 1541(b).  Specifically, the Government's immunity is waived "with respect to injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government of the United States Virgin Islands while acting within the scope of his office or employment."  *Century Alumina Co., LLC*, 2010 WL 56071, at *1 (D.V.I. Jan. 5, 2010) (citing 33 V.I .C. § 3408(a)).   In order to assert a claim under VITCA, claimants must comply with the filing requirements set forth therein. 33 V.I.C. § 3409 ("No judgment shall be granted in favor of any claimant unless such claimant shall have complied with the provisions of this section applicable to his claim.")  In order to file a claim to recover damages for personal injury, the claimant must file a claim "within ninety days after the accrual of such claim" or must "file a written notice of intention to file a claim . . . within two years after the accrual of such claim."  33 V.I.C. § 3409(c).

WAPA argues that, as an instrumentality of the government, it is entitled to the tort protection provided under the statute.   It further argues that because Wilson has failed to comply with the filing requirements of VITCA, the Court lacks jurisdiction to hear her claims for defamation and negligent infliction of emotional distress.  However, the Court need not reach the issue of whether Wilson has complied with VITCA because as we have held in a recent decision, VITCA is inapplicable to WAPA.  *De La Cruz v. Virgin Islands Water and Power Authority*, 2010 WL 1484237, at *5 (D.V. I. April 12, 2010).  Accordingly, WAPA's motion to dismiss will be denied.

## II.      Motion for Summary Judgment

A movant for summary judgment will prevail "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In making this determination, a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000).  "There must, however, be sufficient evidence for a jury to return a verdict in favor of the nonmoving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted." *Bouriez v. Carnegie Mellon University*,  585 F.3d 765, 770-71 (3d Cir. 2009) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir.1994). "A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law." *Id*. (quoting *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir.1992).  "[T]he issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (citations omitted).

Where the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  As the Supreme Court has held:

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.

Once the moving party has carried this burden, the burden shifts to the non-moving party to point to sufficient cognizable evidence to create material issues of fact "such that a reasonable jury could find in its favor." *Id.* (citing *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir.2007) (citing Fed.R.Civ.P. 56(e)).  As the Supreme Court has emphasized, "before the evidence is left to the jury" the judge must determine "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."  *Anderson*, 477 U.S. at 251.

### A.  Factual Background

In reviewing WAPA's motion for summary judgment, the Court views the following facts in the light most favorable to Wilson and draws all inferences in her favor.  *Farrell*, 206 F.3d at 278.

Leticia Wilson applied for a position at WAPA in early 2003 and was interviewed by three WAPA employees in the Line Department: Jean Sargeant-Williams ("Williams"), Carl

Greene ("Greene") and Jasmine Hanley ("Hanley").  (Wilson Dep. at 11.)  At the time of the

interview, Williams was employed as a personal assistant, Hanley as an administrative assistant

and Greene as superintendent.  (Williams Dep. at 23-24).[2]  Following her interview, WAPA

hired Wilson pursuant to the terms of a Notice of Personnel Action ("NOPA") (Dep. Ex. 6.)

The NOPA, dated January 30, 2003 indicated that the Wilson was hired as a CLERK III, and that

the position was "temporary." (*Id.*)  Clerk III is the title used for students who are part of a

program established by WAPA for students at the University of the Virgin Islands ("UVI").

(WAPA Undisputed Facts, ¶ 3, Ex. 2).[3]  The NOPA indicated that Wilson was required to

"maintain student status at the University of the V.I." (*Id.*)   Several WAPA employees testified

that employees in the student program are required to maintain full-time student status at UVI by

enrolling in a minimum of 12 credit hours during the fall and spring semesters.  (Nibbs Dep. at

33; Baumann Dep at 23; Hanley Dep. at 20; Williams Dep. at 28).[4]  One employee, Carl Greene,

stated that he was not aware that student employees had to maintain full-time student status.

(Greene Dep. at 6.)

---

[2] Other WAPA employees and former employees whose depositions form a significant part of the factual
record include: Denise Nibbs, Director of Human Resources, (Nibbs. Dep. at 5-6), and Elroi Baumann,
Personnel Manager.  (Baumann Dep. at 9.); Yaneira Knight, former temporary clerk dispatcher (Knight
Dep. at 7);  Deichelle Berry, former clerk II and clerk typist (Berry Dep. at 8).  The parties also rely on
the testimony of Gloria Euzebe, Department of Labor Adjudicator. (Euzebe Dep. at 5.)

[3] Wilson argues that WAPA did not have a program wherein it hired students from UVI based on the fact
that WAPA did not produce a written job description for the position of Clerk III. However, the evidence,
including testimony of former and current employees of WAPA, overwhelmingly establishes that WAPA
did in fact have such a program.  *See e.g.,* Baumann Dep. at 23; Hanley Dep. at 17, Nibbs Dep. at 25-26,
Williams Dep. at 29-30; Knight Dep. at 7-8; Berry Dep. at 8.  Moreover, Wilson conceded that she was
aware that she had to maintain student status at UVI pursuant to the terms of the NOPA.  (Wilson Dep. at
13-14.)

[4] Wilson contends that she was not told that she had to maintain full-time status, and that in fact, there
was no such requirement.  However, the evidence, including written statements made by Wilson,
indicates that this was a requirement and that Wilson was aware of it.  *See, e.g.,* Baumann Dep at 23;
Hanley Dep. at 20; Williams Dep. at 28; Berry Dep. at 35; Dep. Exs. 16, 19, 40 and 41.

Wilson claims that she was not told during her interview that she had to maintain full-time status. (Wilson Dep. at 12.)[5]   However, Wilson was aware that, pursuant to the terms of the NOPA, she was required to maintain student status at UVI. (*Id*. at 13.) In addition, Wilson was required to submit proof of her enrollment. (*Id*. at 15.)  On at least three occasions, including November 4, 2004, June 13, 2005 and July 8, 2005, Wilson received correspondence from Elroi Baumann reminding her that she had to maintain full-time status at UVI and asking her to present copies of her UVI grade reports. (Wilson Dep. at 15; Dep. Ex. 16, dated June 13, 2005, and Dep. Ex. 19, dated July 8, 2005). On July 18, 2005, Baumann informed Wilson that failure to present the records of her enrollment would be grounds for dismissal from the program.

While Wilson was a WAPA employee, she became pregnant. Wilson told her supervisor, Jasmine Hanley, and a colleague Deichelle Berry, that she was pregnant sometime in March of 2005. (Wilson Dep. at 21.) After she became pregnant, Wilson applied for a full-time position as a clerk dispatcher. (Wilson Dep. at 20.) However, Wilson was not interviewed or hired for that position, and the position was offered to Nadia Francis. (Wilson Dep. at 20.) Wilson also contends that WAPA was recruiting students to replace her and a pregnant colleague, Yaneria Knight. (Dep. Ex. 24 (recruiting notice)[6]; Nibbs Dep. at 65-66; Baumann Dep. at 74; Hanley Dep. at 42-44.) The record establishes that a recruiting notice was produced by WAPA, which stated that there were two positions as a temporary clerk/dispatcher available for full–time UVI students and that applications were due by May 31, 2005, and that there were only two such positions available on St. Croix, which were filled at the time by Wilson and Knight. (Dep. Ex. 24; Nibbs Dep. at 66; Baumann Dep. at 74.)

---

[5] WAPA claims that Wilson was informed of this requirement in her interview. (Williams Dep. at 28.)
[6] The notice states that there were two positions as a temporary clerk/dispatcher available for full–time UVI students and that applications were due by May 31, 2005.

During the course of her pregnancy, Wilson developed a medical condition that required her to temporarily refrain from working.  (Wilson COF ¶ 47.)   Wilson provided WAPA with a doctor's note from the Ingeborg Nesbitt clinic, dated July 22, 2005, indicating that her expected date of return to work was September 12, 2005.  (WAPA Ex. 4.)  Wilson was placed on leave without pay. (WAPA SOF ¶ 8 (citing Ex. 4-LW0002).[7]  At the time that Wilson presented her doctor's note, she was not informed that she was entitled to take 12 (twelve) weeks of leave under the Family Medical Leave Act ("FMLA").  (Baumann Dep. at 62; Wilson Dec. ¶ 11). Although information about the FMLA was posted at various locations within WAPA. (Baumann Dep. at 28-29; Berry Dep. at 16-17; Hanley Dep. at 60-61) and the provisions of the FMLA are contained in WAPA's Policies and Procedure's Manual,  (Hanley Dep. at 60; Dep. Ex. 26 (WAPA Personnel Policies and Procedures Manual, FMLA section), there was no evidence that Wilson received a copy of the handbook or was informed at any time during her employment about her rights under the FMLA. (Baumann Dep. 62-63; Williams Dep. at 24.)

 On August 26, 2005, Wilson went to the Department of Labor ("DOL") to apply for unemployment benefits.  (WAPA SOF ¶ 9 (citing Euzebe Dep. at 8; Ex. 40).  In support of her application, Wilson completed a form that included a "Separation Fact Finding Report."  (Dep. 40.)   In that report, Wilson indicated that she had been discharged by "E. Baumann" because she could not fulfill her contract due to medical reasons.  (*Id*.)   She added the statement that "contract stated must maintain a status as a full-time student at the University.  Because I was out

---

[7] Exhibit 4, LW0002 consists of a letter addressed "to whom it may concern" from Harolyn Lindo, a WAPA Personnel Assistant stating that

> Due to medical reasons, Ms. Wilson was placed on bed rest and as a temporary employee she would receive Leave without Pay until she returns to work.  Therefore, any assistance which could be given to assist Ms. Wilson will gratefully be appreciated.

The letter is on WAPA letterhead and is dated August 22, 2005.

on maternity leave . . .  could not fulfill contract."  The application is dated August 26, 2005.

(*Id*.)

In the course of processing her claim, the DOL sent a Notice of Potential Liability, a

Request for Separation Information and a Fact Finding Report to WAPA ("separation request").

(WAPA SOF ¶ 10 (citing Euzebe Dep. at 24.)   The separation request was sent out on or about

August 26, 2005 and was due on September 4, 2005.   However, WAPA did not respond by the

due date.   Therefore, the DOL asked Wilson to provide information regarding the basis of the

discharge.  (Euzebe Dep. at 15).   Wilson then provided the following written statement to DOL

on a Fact Finding Report:

> I was notified by phone by my supervisor while out on maternity leave that she was
> looking for a replacement for me because she heard that I was not returning back to work
> and school (University of the VI) until January. I was not notified that I was terminated.
> Although there was no written agreement, I was informed upon my hiring that I must
> maintain a status of a full time student at the university in order to maintain my
> employment.
> (WAPA, Ex. 5).[8]

Wilson did not return to work on September 12, 2005 or provide WAPA with an

additional doctor's note.  (Wilson Dep. at 25; WAPA SOF ¶ 15.)    Wilson also failed to enroll at

UVI for the fall 2005 semester.  (WAPA SOF ¶ 16.)   Baumann contacted her shortly thereafter

and Wilson communicated to Baumann that she was unable to return to work or school due to

her health issues.  (Baumann Dep., at 54, Wilson Dec.)

---

[8]The report is dated October 5, 2005; however, the date appearing next to Wilson's signature is
September, 5, 2005.  Wilson contends that the statement she made on September 5, 2005 to the DOL
should not be interpreted as an admission that she had been informed about the requirement to maintain
full-time status.  Wilson explains that the statement only reflects the reason that Baumann gave for
terminating her, and that she had heard Baumann make this statement to Euzebe in a telephone
conversation.  (Wilson Dec. ¶9.)  However, as discussed below, Euzebe testified that she did not receive
any information about Wilson's termination prior to September 29, 2005 and that such information was
received in WAPA's written response, not in a conversation with Baumann over the phone.  (Euzebe Dep.
at 16-17.)  Euzebe also attested that she had not spoken by telephone to Baumann prior to September 23,
2005.  (*Id*.)

Meanwhile, Gloria Euzebe, the DOL adjudicator who was processing Wilson's claim, had not received the separation request information that had been sent to WAPA and made two follow up phone calls to Baumann. (Euzebe Dep. at 16-17.)  Euzebe placed the first call on September 23, 2005 and the second, five days later on September 28.  (*Id*. at 17.)  After the second call, Baumann informed Euzebe that he would return the separation request on September 29th. (*Id*. at 18.)   Baumann did not indicate whether Wilson had been terminated or not in either of these phone calls.  (*Id*. at 19-20.)   The DOL received verification that Wilson had been terminated on September 29, 2005.  (Euzebe Dep. at 19; Dep. Ex. 40, Find Finding Report.) WAPA indicated on the separation request that Wilson had been discharged but did not indicate the last day worked.  The following statement appeared on the Fact Finding Report returned by WAPA:

> Ms. Wilson was hired in a temporary clerical position established specifically for UVI students.  The student-employee[] is required to be enrolled at UVI as a full-time student with a course load of at least twelve (12) credits for the duration of the temporary employment.  Ms. Wilson became pregnant and had a child and as a result was unable to fulfill the stated obligation.  Therefore she was terminated from the position.

This verification report was signed by Baumann and dated September 29, 2005.

The DOL determined, for purposes of unemployment benefits, that WAPA had terminated Wilson by August 21, 2005, effective July 24, 2005. (Wilson COF ¶ 71 (citing Ex. A, Nibbs Dep. at 104-05; Ex. E, Euzebe Dep.)).  WAPA did not challenge that finding.  However, WAPA claims that Wilson was not terminated until September 28, 2005, when her termination NOPA was prepared.  (WAPA SOF ¶ 17 (citing Baumann Dep. at 83; Ex. 23.))  The termination NOPA indicates that the effective date was July 24, 2005.  (WAPA SOF ¶¶ 17-18.)[9]

---

[9] WAPA states that the date July 24, 2005 refers to the last date that she worked.  Wilson contends that the last day she worked was July 22, 2005.

Following her termination, Wilson returned to school in the fall of 2006. (WAPA Ex. 4.)

Wilson now holds a certificate in early childhood from UVI and is currently employed as an

assistant teacher at the Department of Human Services.  (Wilson Dep. at 7.)

### 1. Defamation

Wilson alleges that the conduct of WAPA with regard to statements made about her

termination constitute per se slander, defamation and libel.  (Amed. Compl. ¶ 32.)   Specifically,

Wilson alleges that "Baumann told others in writing and orally that Wilson was not qualified for

her job because she was not a full time student" and that such statements were false.  (Wilson

COF ¶¶ 76-77 (citing Baumann Dep. at 65-66; Dep. 21)   Wilson alleges that statements made in

the interoffice memoranda sent by Baumann, and the statements that Baumann made to the DOL

adjudicator Gloria Euzebe concerning her termination were defamatory.  (*Id*; Wilson Dep. 29-

31).

> To support a claim of defamation, the plaintiff must establish the following:
>
> (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of "special harm" or the existence of "special harm" caused by the publication.[10]

*VECC, Inc. v. Bank of Nova Scotia*, 296 F. Supp. 2d 617, 622 (D.V.I. 2003) (citing Restatement

(Second) of Torts § 558).

A defamatory remark is one that "tends so to harm the reputation of another as to lower

him in the estimation of the community or to deter third persons from associating or dealing with

him." Restatement of Torts (Second) § 559.  "A disparaging remark that tends to harm someone

in his business or profession is actionable irrespective of harm as such a remark falls within the

---

[10] "[L]ibel is the "publication of defamatory matter by written or printed words" while slander is the "publication of defamatory matter by spoken words*." Speaks v. Government of Virgin Islands*, 2009 WL 167330, at *7 (D.V.I. Jan. 14, 2009) (quoting Restatement (Second) of Torts § 568).

definition of slander or defamation per se." *Illaraza v. Hovensa, L.L.C*.,  2010 WL 3069482, at

\*4 (D.V.I. July 30, 2010) (citing *VECC Inc.,* 296 F. Supp. 2d at 623).  To be actionable per se,

the disparaging words "must affect the plaintiff in some way that is peculiarly harmful to one

engaged in his trade or profession."  Restatement of Torts (Second) § 573, cmt e.

Remarks that are deemed to harm a business or professional reputation generally fall into

two categories: those which impugn the integrity of the individual with respect to their job

performance, or those that attack the competence or skill of the employee in carrying out his or

her duties. *See, e.g., VECC Inc*., 296 F. Supp. 2d at 623 (statements were slander per se where

defendant told corporation that its agent endowed with power of attorney could not be trusted

and would steal money from his employer); *Moss v. Camp Pemigewassett, Inc*., 312 F.3d 503,

508 (1st Cir. 2002) (statement that plaintiff had inappropriate contact with boys at the camp

where he worked could constitute slander per se); *Smith v. IMG Worldwide, Inc*., 437 F. Supp. 2d

297, 308-09 (E.D. Pa. 2006) (alleged remarks were slander per se where they ascribed to

plaintiff, an agent for NFL players, conduct that antagonized managers of NFL clubs); *Fuste v.*

*Riverside Healthcare Ass'n*,, 265 Va. 127, 133 (Va. 2003) (statements that doctors had

abandoned their patients and that there were concerns about the doctors' competence constituted

defamation per se);  *Gaudio v. Griffin Health Servs. Corp*., 249 Conn. 523, 543-44 (Conn. 1999)

(letter of termination was per se defamatory where it accused the plaintiff security guard of

"displaying bad judgment and violating established procedures").

The court may determine as a matter of law whether a statement is defamatory where the

meaning of the statement is unambiguous. *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164

F.3d 186, 189 (3d Cir. 1998).  However, "[w]hen the words are capable of either a defamatory or

non-defamatory construction the trier of fact must determine their meaning."  *Id*.

The Court first addresses the written statements in the Baumann inter-office memoranda addressed to Wilson.  As noted above, in those memoranda, Baumann requested documentation of Wilson's enrollment in the spring 2005 semester.  While Wilson has presented evidence that at the time the memoranda were sent, WAPA had already received documentation relating to her enrollment, Baumann indicated that he was unaware of that fact when he issued the memoranda.  (Baumann Dep. at 48.)    Moreover, the Court finds that Baumann's requests for documentation do not impugn Wilson's integrity or attack her competence in performing her job duties and thus do not constitute disparaging remarks that tend to harm her in her business or profession.

With regard to the statements made to Euzebe, the Court also finds that the statements do not constitute defamatory attacks that would tend to harm Wilson in a professional capacity.  Baumann merely informed the DOL, upon a request for information concerning her discharge that Wilson was unable to fulfill the obligation of maintaining full-time status at UVI because she had become pregnant and had a child.  Such statements do not reflect negatively on Wilson's integrity or capacity to do the duties associated with her position as a clerk dispatcher.  The Court must conclude that the statements do not constitute defamation per se.  The Court likewise fails to find that the statements about Wilson's termination tend to harm her reputation in the community or to deter anyone from associating with her.  Restatement of Torts (Second) § 559.  Moreover, Wilson has failed to establish any special harm as a result of Baumann's statement to the DOL.[11]

Assuming arguendo that the statements concerning her termination are subject to a defamatory construction, the Court finds that the evidence on record indicates that the statements were true: Wilson did not enroll in school because of health problems associated with her

---

[11] Wilson was unable to identify how her reputation was harmed.  (Wilson Dep. at 30.)  Instead, she emphasized that the statement was not true and was simply a pretext for firing her.  However, those assertions do not support a claim of defamation.

12

pregnancy, and full-time enrollment was a requirement of the student program at WAPA.  As the

Restatement provides, "[o]ne who publishes a defamatory statement of fact is not subject to

liability for defamation if the statement is true."   Restatement (Second) of Torts § 581A.  "Truth

is an absolute defense to a defamation claim and the defendant bears the burden on that issue."

*Smith v. Virgin Islands Water and Power Authority*, 2008 WL 5071685, at *10 (D.V.I. Nov. 24,

2008) (citing *Flanders v. Shell Seekers, Inc*., 1998 WL 667782, at *4 (Terr. Ct. 1998).  In this

case, the defendant has sustained the burden.  There is ample evidence that WAPA had sought

proof of Wilson's enrollment in UVI when she was employed and throughout the course of her

employment.  Wilson herself twice provided written confirmation that she had been terminated

because she did not fulfill the requirement of maintaining full-time status at UVI.    Thus, there is

no disputed material fact sufficient to maintain a cause of action for defamation against WAPA.

### 2.  FMLA

The stated purpose of the Family and Medical Leave Act is "to balance the demands of

the workplace with the needs of families."   *Schaar v. Lehigh Valley Health Services, Inc*., 598

F.3d 156, 158 (3d Cir. 2010) (citing 29 U.S.C. § 2601(b)(1)).  In accomplishing this purpose, the

FMLA strives to minimize the potential for discrimination on the basis of sex by ensuring that

leave is available "for compelling family reasons" while at the same time "accommodat[ing] the

legitimate interests of employers."  29 U.S.C. § 2601(b)(3)-(4).  In accord with those objectives,

the FMLA provides that an eligible employee is entitled to a total of 12 work weeks of leave

during any 12-month period "[b]ecause of the birth of a son or daughter of the employee and in

order to care for such son or daughter."   29 U.S.C. § 2612.[12]    "After an eligible employee

---

[12] The term "eligible employee" means an employee who has been employed for at least 12
months and for at least 1,250 hours of service with their employer during the previous 12-month
period.  29 U.S.C. § 2611.  WAPA does not contest that Wilson was an eligible employee.

returns from an FMLA leave, the employee is entitled to be reinstated to his or her former position, or an equivalent one." *Conoshenti v. Public Service*, *Elec. & Gas Co.*, 364 F.3d 135, 141 (3d Cir. 2004) (citing 29 U.S.C. § 2614(a)(1)).

Employers who "interfere with, restrain, or deny the exercise of or the attempt to exercise," any right provided under the statute are subject to suit by the employee for damages and equitable relief. 29 U.S.C. § 2617. Employers are required to provide notice to their employees of their rights under the FMLA and a failure to do so will constitute an interference with the employee's right to leave "if the [employee] is able to establish that this failure to advise rendered him unable to exercise that right in a meaningful way, thereby causing injury." *Conoshenti*, 364 F.3d at 143. To conform with the FMLA notice requirements, when an employee seeks leave, an employer must within a reasonable time thereafter "provide the employee with written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." *Id.* (citing 29 C.F.R. § 825.301(b)(1), (c)).

The burden is on the employee to prove that the employer interfered with the exercise of her rights under the FMLA and that the employee has been prejudiced by the violation. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). An employee cannot demonstrate such prejudice for failure to reinstate if he or she is discharged at the end of protected leave for a reason unrelated to the leave. *Conoshenti*, 364 F.3d at 141 (citing 29 C.F.R. § 825.216(a)(1)).

Wilson contends that she was eligible for FMLA leave from July 24, 2005 through October 25, 2005. Wilson alleges that she was never informed of her rights under the FMLA or allowed to take leave. (Compl. ¶ 27.) WAPA does not dispute that Wilson was entitled to FMLA leave and the record leaves in doubt that Wilson was informed either directly or

14

indirectly about her rights under the statute.  However, the Court finds that Wilson has failed to

establish the requisite harm arising out of this failure to inform because even if she had returned

to work at the end of the twelve weeks, she would remain ineligible for employment based on

her failure to maintain her status as a full-time UVI student.[13]  What is more, Wilson has not

established that she forfeited any income or health benefits as a result of WAPA's failure to

provide FMLA relief because she was not entitled to paid leave or benefits as a temporary

employee.  Thus, Wilson has not established a claim under the FMLA.

### 3.   Sex and Pregnancy Discrimination

Wilson alleges that WAPA terminated her because of her pregnancy, in violation of

"equal protection" and alleges that jurisdiction over the matter is pursuant to 42 USC § 1981 and

1983.  Section 1981 prohibits discrimination on the basis of race.  It provides in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right in every
> State and Territory to make and enforce contracts, to sue, be parties, give evidence, and

---

[13] Wilson, citing WAPA's personnel manual, insists that she was a "permanent" employee and thus was entitled to and deprived of various rights provided for such employees.  However, the hiring NOPA and the conduct of the parties indicates that the terms under which Wilson was hired did not change over the course of her employment: just a few months prior to her termination, Baumann was communicating with her regarding the requirement to maintain full-time enrollment at UVI, which was clearly inconsistent with her contention that she was a regular full-time employee.   The Court finds that the case cited by Wilson, *DeMasse v. ITT Corp*., 111 F.3d 730, 732 (9th Cir. 1997) confirms this view.  In *DeMasse,* the Court of Appeals noted that

> An employer's representations contained in a personnel manual  can become terms of the employment contract and limit an employer's ability to discharge his or her employees . . . even though the personnel policies were not bargained for at the time of hiring.  Whether the parties intended to modify their at-will contract, by use of a personnel manual or otherwise, is a question of fact. Evidence relevant to this decision includes the language of the personnel manual, *any representations made by the employer*, and the *course of dealing between the employer and employee*. Reliance is not an essential predicate to the action, but is only one of the several relevant factors.

*Id*. (internal quotations and citations omitted) (emphasis added).  In this case, there were no representations made by WAPA that Wilson was entitled to the benefits provided full-time employees, nor was there any conduct exhibited by either party which assumed such a right.  The Court concludes that the fact that Wilson worked for three years as a temporary employee is not sufficient to override the agreement in operation between the parties.

to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

42 U.S.C. § 1981.

Wilson has not alleged racial discrimination.  Therefore, § 1981 is inapplicable.

Section 1983 prohibits any person, acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia" from subject[ing], or caus[ing] to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  However, as this Court has held, WAPA is not a "person" for purposes of § 1983, and thus this claim must fail.  *Eddy v. Virgin Islands Water and Power Authority*, 955 F. Supp. 468, 477 (D.V.I. 1997).

### 4.  **Violation of Duty of Good Faith and Fair Dealing**

To state a claim for breach of the implied duties of good faith and fair dealing under Virgin Islands law, a plaintiff must allege: "(1) that a contract existed between the parties, and (2) that, in the performance or enforcement of the contract, the opposing party engaged in conduct that was fraudulent, deceitful, or otherwise inconsistent with the purpose of the agreement or the reasonable expectations of the parties." *LPP Mortgage Ltd. v. Prosper*, 2008 WL 5272723, at *2 (D.V.I Dec.17, 2008) (citing Restatement (Second) of Contracts § 205).

Wilson alleges that WAPA wrongfully denied her benefits she was entitled to and fired her because she was pregnant.  WAPA counters that there was no employment contract, and thus, Wilson cannot establish any contractual violation.

The Court must reject WAPA's argument that the lack of a written employment agreement precludes Wilson's contractual claim based on our prior holding that "[t]he implied covenant of good faith and fair dealing applies to at-will employment contracts in the Virgin

16

Islands." *Smith v. V.I. Water & Power Auth.*, 2008 U.S. Dist. LEXIS 95852, at \*24 (D.V.I. Nov. 24, 2008) (citations omitted).

However, Wilson has failed to present any evidence that WAPA engaged in conduct "that amount[ed] to fraud, deceit, or misrepresentation." *Id.* at 24-25 (citing *Marcano v. Cowpet Beach Resort*, 31 V.I. 99, 105 (Terr. Ct. 1995)).  Wilson has not shown that WAPA fired her because she was pregnant or denied her benefits she was entitled to.  As discussed above, there is nothing in the record to indicate that Wilson's status as a temporary employee in the student program changed from the date of hiring such that she was entitled to benefits.  Moreover, the record also shows that WAPA terminated Wilson for failure to enroll as a full-time student at UVI.  Wilson was reminded of the requirement by Baumann several months before she was terminated, and indicated as much in her application for unemployment benefits; thus termination on this basis was not "inconsistent with the . . . reasonable expectations of the parties." *LPP Mortgage Ltd. v. Prosper*, 2008 WL 5272723, at \*2.

### 5.  Negligent infliction of emotional distress

To succeed on a claim of negligent infliction of emotional distress, the "plaintiff must show that she suffered physical injury as a result of defendants' negligent conduct and that defendants should have realized its conduct carried an unreasonable risk of causing such injury." *Smith*, 2008 U.S. Dist. LEXIS 95852, \*29 (citing Restatement (Second) of Torts § 313).  Wilson concedes that her claim is barred by the Virgin Islands Workers' Compensation Act, codified at 24 V.I.C. §§ 251-85, which constitutes the exclusive remedy for an insured employer's acts of negligence.  Thus, the Court finds that this claim fails as a matter of law.

### III.    Conclusion

17

For the foregoing reasons, the Court concludes that defendant WAPA is entitled to summary judgment on all claims currently pending in this matter.  An appropriate Order will accompany this memorandum opinion.

**ENTER:**

Dated:  December 7, 2010.

_____/s/_____
RAYMOND L. FINCH
SENIOR U.S. DISTRICT JUDGE